782 F.2d 1043
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
MORRIS O. AGNEW, Defendant-Appellant.
 85-5200
 United States Court of Appeals, Sixth Circuit.
 12/10/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE
 BEFORE: KRUPANSKY and MILBURN, Circuit Judges; and HIGGINS, District Judge*.
 PER CURIAM.
 
 
 1
 Defendant appeals his conviction of attempting to introduce contraband into a federal correctional institute. Defendant's arguments on appeal address the district court's evidentiary rulings permitting grand jury testimony and an unsworn out-of-court statement to be admitted into evidence.
 
 I.
 
 2
 On July 21, 1984, defendant, who was serving a seventy-five (75) year sentence in the Federal Correctional Institution at Memphis, Tennessee, was visited by Deneice Williams Reed. Following the visit, defendant was searched by Corrections Officer Joe Stevens. During the search, Officer Stevens observed a small plastic bag which contained what appeared to him to be marijuana. After making this observation, Officer Stevens ordered defendant to hand the bag over. Defendant refused and, after a brief struggle, flushed the bag down the commode.
 
 
 3
 An investigation of the incident was conducted by the Federal Bureau of Investigation ('FBI'). In conducting this investigation, FBI Special Agent John C. Eckenrode took a written statement from defendant's visitor on July 21, 1984, Ms. Reed. Ms. Reed explained how, on defendant's request, she brought the marijuana into the visiting room and transferred it to defendant's possession. Ms. Reed subsequently repeated this version of the events in greater detail to the grand jury.
 
 
 4
 On September 10, 1984, the grand jury returned a two-count indictment against defendant. In the first count of the indictment defendant was charged with attempting to introduce contraband into a federal correctional institute in violation of 18 U.S.C. sections 1791, 2. In the second count of the indictment defendant was charged with assaulting, resisting, opposing, impeding, and interfering with a correctional officer in the performance of his duties in violation of 18 U.S.C. sections 111, 1114.
 
 
 5
 During defendant's trial, Ms. Reed indicated that her trial testimony would be different than her earlier statements. On advice of counsel, Ms. Reed subsequently exercised her fifth amendment right and did not testify at trial. Relying on Rule 804(b)(5) and United States v. Barlow, 693 F.2d 954 (6th Cir. 1982), cert. denied, 461 U.S. 945 (1983), the district court allowed the government to introduce Ms. Reed's prior written statement and grand jury testimony. Among other evidence, the government also introduced the testimony of Officer Stevens.
 
 
 6
 At the conclusion of the trial, the jury found defendant guilty on both counts. The court sentenced defendant to a one (1) year imprisonment on each count to be served concurrently with each other but consecutively to the seventy-five (75) year sentence being served. Defendant has not appealed the conviction for Count II (interfering with a correctional officer).
 
 
 7
 The issues presented on appeal are: (1) whether the prior written statement and grand jury testimony were admissible under Rule 804(b)(5) of the Federal Rules of Evidence, (2) whether the introduction of either of these statements violated the confrontation clause of the sixth amendment, and (3) whether the court should exercise the concurrent sentence doctrine and decline review. For the reasons that follow, we affirm.
 
 II.
 A. Admissibility of Grand Jury Testimony
 
 8
 Defendant first argues that Ms. Reed's grand jury testimony was not admissible under Rule 804 of the Federal Rules of Evidence. Rule 804 (Hearsay Exceptions; Declarant Unavailable) provides in relevant part:
 
 
 9
 (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 (5) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness . . ..
 
 
 13
 The analysis applicable to the instant case was set out in United States v. Barlow, 693 F.2d 954, 961 (6th Cir. 1982), cert. denied, 461 U.S. 945 (1983): '[I]n determining whether grand jury testimony of a government witness is admissible under Rule 804(b)(5) the trial court must first ascertain whether the witness is 'unavailable' within the meaning of the Rule.' Defendant does not dispute Ms. Reed's unavailability.
 
 
 14
 The next step in the inquiry was set out as follows:
 
 
 15
 Second, the trial court must determine whether the substance of the grand jury testimony possesses 'circumstantial guarantee of trustworthiness' equivalent to the other exceptions included in Rule 804. In making this determination the trial court should consider the declarant's relationship with both the defendant and the government, the declarant's motivation to testify before the grand jury, the extent to which the testimony reflects the declarant's personal knowledge, whether the declarant has ever recanted the testimony, and the existence of corroborating evidence available for cross-examination.
 
 
 16
 Barlow, 693 F.2d at 962.
 
 
 17
 With regard to Ms. Reed's relationship with defendant and motive to testify, we note that Ms. Reed had known the defendant since 1971 and considered herself a 'close personal friend' of defendant. App. at 148, 159. In fact, in her grand jury testimony Ms. Reed testified that between November, 1983, and July 21, 1984, she visited defendant in the correctional institute once a week. App. at 148. Moreover, according to Ms. Reed, when defendant Agnew wrote her, he addressed the letters to 'Mrs. Neece Agnew.' App. at 157. This close relationship between Mr. Reed and defendant, of course, provided a disincentive for Ms. Reed to supply false testimony inculpating defendant.
 
 
 18
 The relationship between Mr. Reed and the government, on the other hand, consisted of her promise to be 'one-hundred per cent truthful' in her testimony in exchange for the government's promise not to press charges. App. at 155. Immunity was not granted in exchange for Ms. Reed's promise to provide incriminatory testimony.
 
 
 19
 Turning to the next factor, it is clear that the testimony at issue directly reflects Ms. Reed's personal knowledge. Furthermore, the nature of the events related in the testimony suggest the likelihood that they would be remembered.
 
 
 20
 The only factor in the Barlow test which cuts against the government's position is that Ms. Reed subsequently recanted her testimony. This factor is, like the others, an important one, but it is the only one which indicates a lack of trustworthiness and, of course, is not dispositive. Moreover, it is important to note that the jury was informed that Ms. Reed had recanted her testimony. Although the testimony could not be considered more reliable as a result of this information, it did not bear an aura of trustworthiness greater than it was due. Cf. Dutton v. Evans, 400 U.S. 74, 88, 91 S. Ct. 210, 219 (1970) (noting the value of the fact that an opinion 'carried on its face a warning to the jury against giving the statement undue weight').
 
 
 21
 Finally, we turn to 'the existence of corroborating evidence available for cross-examination.' Ms. Reed's testimony was used to show that she brought marijuana into the correctional institution and transferred it to defendant's possession. Specifically, Ms. Reed testified that she smuggled two to three teaspoons of marijuana in a plastic wrapper into the institution. App. at 151, 158. Corroborating this testimony was the in-court testimony of Officer Stevens. As noted, Officer Stevens testified that a substance which appeared to be marijuana was in a plastic bag. Officer Stevens also testified that the plastic bag was approximately two inches long and a half-inch wide. App. at 20-21. After supplying this corroborating testimony, Officer Stevens was cross-examined by defendant. Accordingly, we hol that Ms. Reed's grand jury testimony was admissible under Rule 804(b)(5).
 
 
 22
 Defendant also argues that the admission of Ms. Reed's grand jury testimony violated the confrontation clause of the sixth amendment. The Supreme Court has made clear that the confrontation clause does not require that a defendant have the opportunity to cross-examine a witness. Rather, '[t]he focus of the Court's concern has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant." Mancusi v. Stubbs, 408 U.S. 204, 213, 92 S. Ct. 2308, 2313 (1972) (quoting Dutton v. Evans, 400 U.S. at 89, 91 S. Ct. at 220).
 
 
 23
 While the Rule 804(b)(5) inquiry as to 'circumstantial guarantees of trustworthiness' is similar to the confrontation clause question of reliability, the overlap is not complete. United States v. Barlow, 693 F.2d at 965 n.10. Instead, the following factors have been considered determinative of the confrontation clause issue:
 
 
 24
 (1) The statement contained no express assertion about past facts.
 
 
 25
 (2) The declarant was in a position to have personal knowledge of the matters in the statement.
 
 
 26
 (3) The possibility that the declarant's statement was founded on faulty recollection [was] extremely remote.
 
 
 27
 (4) The circumstances surrounding the making of the statement were such that the possibility of misrepresentation was unlikely.
 
 
 28
 United States v. Lee, 589 F.2d 980, 989 (9th Cir. 1979) (interpreting Dutton v. Evans, 400 U.S. 88-89).
 
 
 29
 In the instant case the statement was an 'express assertion about past facts' and not an opinion. However, as we held in Barlow, the absence of this factor is not controlling when, as here, other adequate indicia of reliability are present. Barlow, 693 F.2d at 965.
 
 
 30
 Turning to the second factor, we note that the declarant, Ms. Reed, was certainly in a 'position to have personal knowledge of the matters asserted.' Similarly, because of the nature of the transaction, the location of the events at issue, and the relationship of the parties involved, 'the possibility that the declarant's statement was founded on faulty recollection is extremely remote.'
 
 
 31
 Finally, considering that the statement at issue was given under oath before a federal grand jury under the penalty of perjury and with the promise not to press charges hinging on the promise to tell the truth, 'the circumstances surrounding the making of this statement were such that the possibility of misrepresentation was unlikely.' Accordingly, we hold that the admission of Ms. Reed's testimony was not violative of the confrontation clause.
 
 B. Admissibility of Written Statement
 
 32
 Ms. Reed's written statement was read to the jury and takes approximately one full page of the trial transcript. App. at 132-33. Ms. Reed's grand jury testimony read at trial, on the other hand, covers over thirteen pages of the trial transcript. App. at 146-60. Both the written statement and the grand jury testimony describe how, at defendant's direction, Ms. Reed smuggled the marijuana into the institution and transferred it to defendant's possession. The only notable difference between the two statements is that the grand jury testimony described the events in greater detail. Since, as we have held, the grand jury testimony was properly admitted and since the written statement was cumulative, we hold, without reaching the merits of the issue, that any error which may have occurred in the admission of Ms. Reed's written statement was harmless. Fed. R. Crim. p. 52.
 
 III.
 
 33
 In accordance with the foregoing, we AFFIRM defendant's conviction.
 
 
 
 *
 The Honorable Thomas A. Higgins, Judge, United States District Court for the Middle District of Tennessee, sitting by designation